**SO ORDERED.**

**SIGNED this 27 day of March, 2020.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| LOUIS MICHAEL GOLDBERG | 18-03592-5-JNC |
| | CHAPTER 7 |
| DEBTOR | |

## MEMORANDUM OPINION

Pursuant to 11 U.S.C. § 506(b), on December 30, 2019, WBL SPO I, LLC ("WBL") filed the Motion to Determine Secured Status (Dkt. 31; the "Motion"). An objection to the Motion was filed by competing creditor First National Bank of Pennsylvania ("FNB") on February 4, 2020, maintaining among other defenses that the court has no jurisdiction over the controversy (Dkt. 40; the "Objection"). A hearing was held on February 11, 2020 in Greenville, North Carolina. First Citizens Bank & Trust Company ("FCB"), the acknowledged holder of the first lien against the subject property, also appeared.

At the conclusion of the hearing, the court announced that while it possessed jurisdiction over the matter, because WBL and FNB had an adequate remedy readily available in a pending state court proceeding, the outcome of which would not materially affect rights of the bankruptcy estate or the debtor, Louis M. Goldberg (the "Debtor"), the court declined to exercise that

jurisdiction and voluntarily abstained. An order was then entered returning the matter to state court. This Memorandum Opinion provides further explanation of the basis of that decision.

## FACTS

The pertinent underlying facts are uncontroverted. The Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on July 19, 2018 (Dkt. 1). As of the petition date, his residence, located at 2204 Timberlake Drive, Raleigh, NC (the "Real Property"), was encumbered by three deeds of trust filed in the Wake County Public Registry, identified as follows: (1) Book 13625, Page 2305, recorded October 6, 2008, to FCB (the "FCB DOT"); (2) Book 15540, Page 2682, recorded December 23, 2013, to Yadkin Bank, subsequently assigned to FNB as successor (the "FNB DOT"); and (3) Book 16955, Page 2389, recorded October 31, 2017, to World Business Lenders, LLC, subsequently assigned to WBL (the "WBL DOT"). Also, on October 31, 2017, a Subordination Agreement in favor of WBL was executed by FNB and recorded in Book 16955, Page 2389, of the Wake County Public Registry (the "Subordination Agreement"). Under it, the FNB DOT was subordinated for lien priority purposes to the WBL DOT in the limited amount of $90,000 for a period of fifteen months.

On September 14, 2018, WBL filed a Motion to Modify Stay (Dkt. 16) seeking authority to foreclose the Real Property due to payment default. On October 12, 2018, an order (Dkt. 20; the "WBL Order") granting that motion was entered, stating in pertinent part:

> [T]his Court has jurisdiction over the parties and that this is a core proceeding . . . NOW, THEREFORE, IT HEREWITH IS ORDERED, ADJUDGED AND DECREED that the automatic stay provisions of 11 U.S.C. § 362(a) be and the same are hereby modified or terminated so that [WBL] and any Trustee or Substitute Trustee may foreclose on the real property as shown herein and otherwise enforce its rights in the real property as permitted by North Carolina law and the Deed of Trust.

On September 26, 2018, Debtor reaffirmed the debt to FCB in the amount of $148,726.16 and agreed to make monthly payments (Dkt. 19; the "Reaffirmation Agreement"). By February

2

2019, he had failed to make the monthly payments required under the Reaffirmation Agreement, thereby defaulting on the reaffirmed FCB obligation. FCB began foreclosure proceedings on its first lien deed of trust.[1] Its foreclosure sale was conducted on November 20, 2019, where a high bid of $315,000 was placed by a third party. No subsequent upset bid was filed.

At the hearing, counsel for FCB reported that the foreclosure trustee had completed the sale process, and that he was prepared to file a final accounting with Wake County Clerk of Court and issue a deed. She estimated that after payoff of the FCB obligation (including costs and fees) the sum of approximately $117,000 would remain for junior lien creditors and be deposited with the clerk.

In the Motion and Objection, junior lien creditors (FNB and WBL) dispute their respective priority rights in the excess funds. The Motion seeks a declaration from the court that the Subordination Agreement remains effective and WBL is entitled to receive the surplus sale proceeds. In the Objection, FNB contends: (a) the court lacks subject matter jurisdiction because the Real Property is no longer part of the estate due to the Order Granting Motion to Lift Stay entered October 12, 2018 (Dkt. 20) to WBL; and (b) even if jurisdiction remains, the Subordination Agreement, limited by its terms to fifteen months, has expired, thereby entitling FNB to a reinstatement of lien priority over the excess proceeds.

---

[1] A question arose as to whether, given the Reaffirmation Agreement and the Debtor's postpetition default under its terms, FCB needed to obtain stay relief before conducting its foreclosure. Out of a prudent abundance of caution, a consent order was submitted by FCB establishing stay relief, which all affected parties signed or confirmed no objection. The consent order was approved and entered by the court on September 11, 2019 (Dkt. 47). The consent order was captioned as "nunc pro tunc," which term was recently characterized as an "Orwellian vehicle for revisionist history" in *Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 701 (2020). However, unlike the order at issue there, the FCB consent order did not "change history," but rather solidified for the record an actual set of events. Usage of the term nunc pro tunc here is superfluous as the actual effect of the consent order is to protect FCB from needless collateral attack and bolster rather than change history.

**LAW AND ANALYSIS**

  *1. Automatic Stay*

  Upon the filing of a bankruptcy petition, § 362(a) operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). A party may formally ask the bankruptcy court for partial or complete relief from the stay by motion pursuant to § 362(d), or it may effectively obtain stay relief if the bankruptcy court exercises its discretion to refrain from hearing a matter and remand it to state court. If a motion for relief is granted, the stay relief only extends to the specific relief given in the order. The mere lifting of stay to allow one party to pursue its state law remedy rights does not, in and of itself, divest the bankruptcy court of all jurisdiction over the affected property or if liquidated, the resultant sale proceeds not addressed in the stay relief order. *See Catalano v. Comm'r*, 279 F.3d 682, 686 (9th Cir. 2002). Although the subsequent effect of a sale of the property may pass the property from the control of the estate, that does not mean that all of the estate's potential or existing interest in the asset is extinguished; the act of lifting the automatic stay is not analogous to an abandonment of the affected property under 11 U.S.C. §554, which acts as a jurisdictional bar. *Id* at 687. Relief from the automatic stay typically only entitles a specified creditor to take action to realize its security interest in property. If a change outside of the confines of the order lifting stay occurs, such as the creation of proceeds in excess of the foreclosing creditor's security interest, those assets remain subject to the automatic stay.

  Consequently, no order issued by this court abandoned the asset or surrendered jurisdiction over theoretical (and now real) surplus foreclosure sale proceeds. WBL never completed its foreclosure after obtaining stay relief; the $117,000 at issue comes from FCB's foreclosure action. Those funds are not generated by any action on the part of WBL. The two lift stay orders were specifically limited to WBL's and FCB's respective and differing foreclosure rights. Neither order

contained language surrendering jurisdiction over excess sale proceeds. In addition, FNB's argument fails to the extent that it implies that the Real Property was abandoned. The orders granting relief from the stay did not mention abandonment under § 554 or otherwise. Absent a formal order of abandonment contained within the order granting relief from the stay, abandonment is not accomplished. *See* 11 U.S.C. § 554(d).[2]

### 2. *Subject Matter Jurisdiction*

FNB has raised some but not all possible jurisdiction issues. Under 28 U.S.C. § 157(b)(3), this court has an independent duty to consider its jurisdiction, and it addresses the recognizable jurisdiction issues below.

#### a. Core

The jurisdiction of the federal bankruptcy court is grounded in statute. Bankruptcy court subject matter jurisdiction is initially divided into two categories: its extensive jurisdiction over "core" matters, and its more limited jurisdiction over "non-core" matters. Under 28 U.S.C. § 157(b)(l), bankruptcy courts have the power to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," and to enter final orders and judgments as to those matters. Although no definition of "core proceeding" is provided within the statute, Congress did furnish a descriptive list of matters included within the boundaries of bankruptcy court jurisdiction. Examples include the administration of the estate; motions to terminate, annul, or modify the automatic stay; determinations of the validity; extent; or priority of liens; and other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship.

---

[2] 11 U.S.C. § 554(d) states that "unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate."

   b. *Non-Core*

In addition, pursuant to 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11." *Celotex Corp. v Edwards*, 514 U.S. 300, 307 (1995). Where a matter is non-core, the Bankruptcy Court's jurisdiction is based on the "arising under," "arising in," or "related to" language of §§ 1334(b) and 157(a). *Id.* The jurisdictional grant contained in § 1334(b) represented a distinct departure from the jurisdiction conferred under previous bankruptcy laws, which largely had been limited to either possession of property by the debtor or consent as a basis for jurisdiction. *Id.* at 308. Although Congress did not define the scope of "related to" jurisdiction, its choice of words suggests it can be read broadly. *Id.* The legislative intent behind the law is to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. *Celotex*, 514 U.S. 308 (citing *Pacor, Inc. v Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)). Moreover, the Supreme Court agrees that the "related to" language of § 1334(b) must be read to give district courts (and bankruptcy courts through reference and assignment orders) jurisdiction under § 157(a) over more than simple proceedings involving the property of the debtor or the estate. *See Celotex*, 514 U.S at. 308.

   c. *Surplus proceeds as estate property*

The commencement of a bankruptcy case creates an "estate," which includes "all legal or equitable interests of the debtor in property as of the commencement of the case," as well as the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541. Additionally, § 541(a)(6) clearly provides that all the escrowed proceeds of the sales can be included as property of the estate as such proceeds are proceeds "from property of the estate." 11 U.S.C. § 541(a)(6); *In re Zachman Homes, Inc.*, 83 B.R. 633 (Bankr. D. Minn. 1985) (holding that

the court has jurisdiction pursuant to 28 U.S.C. § 1334(e) over escrow proceeds from sale of Chapter 7 debtor's property, despite the estate's only nominal interest if all funds will ultimately be distributed to secured creditors, since under § 541(a)(6) such proceeds are "from property of estate"); *see also In re Solid Rock Dev. Corp., Inc.*, 481 B.R. 221, 228 (Bankr. N.D. Ga. 2012) (holding that excess foreclosure sale proceeds were property of the bankruptcy estate and that judicial determination as to whether bankruptcy trustee could recover surplus proceeds of foreclosure sale was a core proceeding subject to the bankruptcy court's jurisdiction under 28 U.S.C. § 157).

The customary articulation of the test for determining whether a civil proceeding is "related to" bankruptcy is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor*, 743 F.2d at 994. An action is "related to" bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, and which in any way impacts upon the handling and administration of the bankruptcy estate. *Id*. On the other hand, "[j]urisdiction over nonbankruptcy controversies with third parties who are otherwise strangers to the civil proceeding and to the parent bankruptcy does not exist." *Id.* The First, Fourth, Sixth, Ninth, Tenth, and Eleventh Circuits have adopted the "related to" test with little or no variation.

FNB cites two cases in support of its claim of an absence of subject matter jurisdiction, *In re Figured*, 2009 Bankr. LEXIS 2580, (Bankr. E.D.N.C. Aug. 31, 2009) and *In re Daniel*, 2016 WL 6651271, (Bankr. M.D.N.C. July 11, 2016). The central issue raised in both cases was whether the filing of a petition after the completion of a foreclosure sale and expiration of the ten-day upset bid period imposed by N.C. Gen. Stat. § 45-21.27 would invoke the automatic stay and prevent recordation of a foreclosure trustee deed.

7

In *Figured*, the debtor filed a bankruptcy case and properly invoked the stay to block a foreclosure. The lien creditor subsequently obtained stay relief during that case and proceeded to conduct the foreclosure proceeding and sale. After the sale and expiration of the upset bid period, the debtor filed a second chapter 13 petition in an effort to block the trustee deed recordation with a new automatic stay. Because the new case was filed after the upset bid period expiration, the court held that the debtor's entire interest in the real property had already been transferred to the bidding creditor and the second case automatic stay did not apply.

Under similar facts (but involving only one bankruptcy case), the *Daniel* court squarely held that under North Carolina law, following the expiration of the upset bid period, a debtor no longer owns an interest in the real property and therefore has no basis or standing to oppose a motion for relief from stay. Because the *Daniel* debtor failed to timely submit an upset bid upon the completion of the foreclosure sale and filed a bankruptcy petition after the time expired, the respective rights of the debtor and purchaser in the property were fixed when the bankruptcy case was initiated.

*Figured* and *Daniel* were correctly decided, but unlike those cases, here property rights survived the foreclosure process undertaken after stay relief was granted. First, the available proceeds do not originate from the WLB stay relief order relied upon by FNB in its Objection, but instead are the product of the FCB sale process. WBL's and FNB's competing claims on the excess funds are wholly unaffected by the WBL stay relief order. Next, Mr. Goldman and the estate have at least a potential interest in the surplus funds. For example, if the junior liens were improperly recorded, or otherwise subject to avoidance in a chapter 5 action, either Mr. Goldman (under his exemption claim) or the estate could file an adversary proceeding seeking to recover the excess funds; those rights were not terminated in either the FCB or WBL stay relief orders. Finally, FCB's

8

right to be paid in full and the high bidder's right to a trustee deed are unaffected by retention of jurisdiction over the excess proceeds only. *Figured* and *Daniel* are inapplicable, and the automatic stay remains in place as to the excess proceeds.

   *d. Competing creditors*

In *New Horizon of NY LLC v Jacobs*, 231 F.3d 143 (4th Cir. 2000), the Fourth Circuit held that the district court did not have "related to" jurisdiction under 28 U.S.C. § 1334 in an action only tangentially related to a bankruptcy estate where no plaintiff or defendant in the case was a debtor in a bankruptcy case, the claims or subject property were not part of a bankruptcy estate, and outcome would not affect the debtor or estate in any way. Instead, the parties were creditors or successors to creditors, or were otherwise affected by outcome of the relevant bankruptcy cases.[3] In the opinion, the Fourth Circuit appeared to take a narrow view of the *Pacor* test and held that "related to" federal jurisdiction exists in an action between creditors or non-debtor parties only "if the outcome [of the proceeding] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and [the proceeding] in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 151 (quoting *Spartan Mills v. Bank of Am. Ill.*, 112 F.3d 1251, 1255–56 (4th Cir. 1997), *cert. denied*, 522 U.S. 969 (1997). Because resolution of the inter-creditor or successor entity squabble had no conceivable effect on the related bankruptcy cases where rights had already been finalized, the district court lacked subject matter jurisdiction in the case. *Id.* at 155. It would logically follow, then, that where the debtor and its creditors (secured or unsecured) are potentially affected by competing interests in an asset (such as a lien priority dispute), any proceeding concerning the debate is "related to" a bankruptcy case.

---

[3] The relevant facts in *New Horizons* heavily involved two complex bankruptcy cases originating in this court: *In re Tudor Associates, Ltd. II*, No. 77–BK–06–04 and *In re AJ & AJ Servicing, Inc.*, No. 94–00135–8–JRL.

Here, creditors FNB and WBL have been active participants throughout and hold claims in the bankruptcy case. The FCB foreclosure sale did not, simply by converting the form of property, remove jurisdiction over that property. *See In re Zachman Homes, Inc.*, 83 B.R. 633. These same creditors now dispute their respective priority interests in the excess sale proceeds generated. An action is "related to" bankruptcy if the outcome alters or affects creditor or debtor rights, liabilities, options, or freedom of action, and impacts in any material way on the handling and administration of the bankruptcy estate. As established above, the stay relief orders do not remove to the excess sale proceeds. The dispute over senior lien rights will determine the relative unsecured claims remaining in the estate if a distribution is available in it. Consequently, rights to the receipt of the excess foreclosure sale proceeds are not just "related to" but directly implicate administration of a bankruptcy estate. The court therefore holds subject matter jurisdiction over this controversy.

  *e. Voluntary Abstention*

Having jurisdiction does not alone answer whether, under the unique facts of a case, a court should retain jurisdiction, or, where no distribution to the debtor or unsecured creditors will result and a clear remedy is available to the competing creditors under state law, instead exercise discretion and abstain.[4] Under 28 U.S.C. § 1334(c)(l), a court may exercise "discretionary" or "permissive" abstention in a proceeding regardless of whether the matter falls within "core" or "related to" jurisdiction if the abstention is in the interest of justice, comity, or respect for state law. While the statute defines permissive abstention quite broadly, bankruptcy courts have frequently given a narrow construction to the terms "interest of justice," "interest of comity with state courts," and "respect of state law."

---

[4] Pursuant to North Carolina General Statute § 45-21.32, "a special proceeding may be instituted before the clerk . . . to determine who is entitled thereto." N.C. Gen Stat. § 45-21.32(a).

10

To determine whether abstention is appropriate, a twelve-factor test is employed "flexibly, for [its] relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Mitchell v. Keessee (In re Mitchell)*, No. 11-08880-8-ATS, 2013 WL 5798941, at *2 (Bankr. E.D.N.C. Oct. 25, 2013) (quoting *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993)); *see also Gen. Wood Preserving Co. v. Wind Gap Farms (In re Gen. Wood Preserving Co.)*, L-02-00146-8-AP, 2002 Bankr. LEXIS 2131 (Bankr. E.D.N.C. Dec. 17, 2002) (holding abstention from a case concerning breach of contract, unjust enrichment, and quantum meruit was warranted because of the predominance of state law issues and the existence of a valid forum selection clause, judicial efficiency, the right to make a jury demand, and the impact of the bankruptcy venue statute); *but see Sparrow v. Drew (In re Sparrow)*, No. 16-01550-5-DMW, 2016 Bankr. LEXIS 2819, (Bankr. E.D.N.C. Aug. 4, 2016) (holding abstention in a divorce action removed to a bankruptcy court was not warranted since the *Mitchell* factors weighed against permissive abstention). Listing, applying and analyzing the *Mitchell* factors to the facts of this case follow.

    a.    <u>Efficient Administration of the Estate.</u> N.C. Gen. Stat. § 45-21.31(a) provides that "a special proceeding may be instituted before the clerk . . . to determine who is entitled [to excess foreclosure proceeds]." Further, N.C. Gen. Stat. § 45-21.32(c) allows for the transfer of such a special proceeding to the North Carolina Superior Court for trial if issues exceed the clerk of court's limited jurisdiction. On the other hand, in this court, to resolve the priority of a lien, the parties must file a new adversary proceeding as required under Fed. R. Bank. P. 7001.Here, a state court action already exists; a new lawsuit would only delay and impede the efficient administration of the estate. The state special proceeding procedure likely can be accomplished months faster than a new adversary proceeding. Given the availability of adequate substantive and procedural

11

remedies in state court, and the progress already made in the state court matter, the efficient administration of the estate prong weighs in favor of voluntary abstention.

  b. <u>State Law Issues Compared to Bankruptcy Law Issues.</u> While determination of competing lien priority is often a central issue in bankruptcy cases, typically state property and contract law control the outcome. Here, the central issue of interpretation of the Subordination Agreement and its effect on priority of liens under N.C. Gen. Stat. § 45-21.31(a) is purely a question of North Carolina contract and real property law. The distribution and lien priorities set forth in Bankruptcy Code Sections 507, 724 and 727 make no difference to the result.

  c. <u>Difficulty or Unsettled Nature of the Law.</u> While interpretation of the Subordination Agreement's terms is admittedly challenging, those provisions do not present novel, complex, or unsettled areas of law that fall outside the abilities of the state court's purview. No pressing need for retaining the matter in bankruptcy court is present.

  d. <u>Presence of a Related Proceeding Outside the Bankruptcy Court.</u> As noted, the affected parties are all parties to a related and ripe state court proceeding that has progressed far further than a new adversary proceeding. Voluntary abstention advances rather than hinders efficient administration of this estate.

  e. <u>Jurisdictional Basis.</u> As noted above, the bankruptcy court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151 and 157(b).

  f. <u>Degree of Remoteness to the Bankruptcy Case and Substance of the Core Proceeding.</u> The distribution of the surplus foreclosure sale proceeds to the debtor's secured creditors will not have a substantial effect on the debtor as he has been discharged from liability on any deficiency owed to FNB or WBL at the conclusion of this matter and regardless of the outcome. The debtor received a discharge on October 17, 2018 (Dkt. 22), more than two years

ago. Also, the outcome will not affect any potential distribution to unsecured creditors as no forecast of an avoidance claim appears to exist. An intervention by the trustee into this matter would therefore only serve to reduce unsecured creditor distribution as administrative costs would increase. Because all proceeds will eventually be paid to FNB or WBL and neither the debtor nor unsecured creditors have an economic stake in the outcome of the dispute.

   g. <u>Feasibility of Severing State Law Claims.</u> No severance of claims is required.

   h. <u>Burden on the Bankruptcy Court Docket.</u> This matter would not unduly burden the bankruptcy court docket even though an adversary proceeding must be filed. As noted, a new lawsuit only delays a proceeding that has substantially progressed in state court.

   i. <u>Likelihood of Forum Shopping.</u> Neither party is engaged in improper forum shopping.

   j. <u>Right to a Jury Trial.</u>  Neither WBL nor FNB is entitled to a jury trial.

   k. <u>The Presence of Non-Debtor Parties</u>. Only WBL and FNB as competing secured lienholders would be required to return to the bankruptcy court to modify proofs of claim, and then only in the event a distribution to unsecured creditors is available.

   Given the advanced progress in the state case, the ready availability of an adequate and fair state court remedy, the lack of economic effect from the outcome on the discharged debtor and unsecured creditors, the circumstances overwhelmingly dictate voluntary abstention and remand. Accordingly, as established in the prior order, the Motion is **DENIED.**

**END OF DOCUMENT**